EQUITY JURISDICTION—PRACTICE.

EDMUND STITES, Complainant, *vs.* NOAH B. KNAPP, SETH B. JONES, CHRISTOPHER C. THOMPSON, JAMES A. CLIFFORD, *et. al.* Defendants.

## In Equity.

1. A Court of Equity will not restrain a judgment at common law, on the ground of irregularity in obtaining it, or on the ground of want of jurisdiction in the common law court.

2. A Sheriff's return of service cannot be impugned, by a bill filed to set aside the judgment; but, if false, the remedy is by action against the officer.

3. The question of jurisdiction of the defendant's person belongs to the court, where the suit is brought; and may be raised at any stage of the proceedings, if defendant is not in laches.

This is a bill of complaint, which was presented to my consideration, on the 17th February last, praying an Injunction, to restrain the defendants, in the use of certain executions, founded upon judgments, which they had recovered against the complainant, in the Court of Common Pleas and Oyer and Terminer, for the City of Savannah. Having, then, great doubts as to the power of this Court, to interfere and restrain said executions, by its process of Injunction, under the allegations as contained in this bill, I granted a rule for the defendants to shew cause before me, why the Injunction, as prayed for, should not be issued.

The principal allegations, as contained on the face of this bill, are: That, at the time of the service of the original petitions and process, issued at the instance of the defendants, from the Court of Common Pleas and Oyer and Terminer for the City of Savannah, he, the complainant, was a resident of the County of Laurens, in the State of Georgia, and not a resident of the City of Savannah; and that, therefore, the said Court had no jurisdiction over his person, in the subject matter of said suits. That the return, made by the Deputy Sheriff of said Court, as to the service of said writs, is illegal and

[Stites *vs.* Knapp, & al.]

void. That he was not apprised of the existence and progress of said suits, until after the judgments had been recovered against him, and that then application was made to the Judge of said Court, for relief, which was refused. In these facts, consists the whole Equity of this bill.

Having heard the argument upon the rule nisi, from the counsel on both sides, the question, which is presented for my decision, is—assuming the above facts to be true, can this Court, by its process of Injunction, interpose and restrain the defendants, in the use of their executions, founded on the said judgments; or, if not, has the complainant any adequate remedy at Law, which can afford him relief?

Now, that the complainant, if, in truth and in fact, a resident of the County of Laurens, at the time of the service of said writs, was entitled, as a constitutional privilege, to be sued in the County of his residence, is not questioned. But this fact is denied, by the defendents; and, in support of that denial, I am referred to the original returns, made by the Deputy Sheriff of the Court of Common Pleas and Oyer and Terminer, for the City of Savannah, as to the legality of the service of the process upon the complainant. Having examined these original returns, I find them, each, to be in the following words:—"City Sheriff's Office, Savannah, January 22, 1842. I "have served a copy of the within, by leaving the same at the resi-"dence of Mrs. Tullegant, where the defendant's family usually re-"sides. The return of M. S. DeLyon, Deputy Sheriff." That the Courts of Common Pleas and Oyer and Terminer, for the City of Savannah, with such a return before it, made by its officer, under his oath, would have a right to entertain jurisdiction of the causes, and proceed to award judgment, I cannot doubt. (See Act 29th Dec. 1828, Pamphlet Laws, 1828, p. 203.) Now, admitting the above returns, made by the Deputy Sheriff, in the Court below, *to be false*, can this Court now interpose, after judgment, by its process of Injunction, and restrain the proceeding, under the executions issued therein? I think not; and no case, I apprehend, can be found, which will sanction such an exercise of power, on the part of this Court. The truth or falsity of that return, the regularity or irregularity of the service complained against, is a question, I apprehend, which belongs, exclusively, to the Court assuming original Jurisdiction of the

[Stites *vs.* Knapp, & al.]

cause; and that question must be tried and decided, by such Court alone, by a motion founded on a proper statement of facts, under oath. It may be made, at any stage of the proceedings in the cause, provided the party, affected by such irregularity, is not guilty of laches, and takes advantage of it, by proper application, as soon as known to him.—1 *Dunlap's P.* 332, 333; *Tidd P.* 538. That the Court below had the power to hear and determine such a motion, on the part of the complainant, if the same had been made in proper time, and supported by a proper shewing, I have little doubt; for it is the duty of every Court, to correct its own errors, when made to appear, and to see that its proceedings are regular, and in pursuance of Law.— The cases of Robb & Nelson *vs.* Moffatt, (3 *John. R.* 257; 4 *Taunt.* 545, 818,) are, it seems to me, conclusive, as to this point. Now, that the complainanant could not have taken advantage of the irregularity of the service of the writs, issued against him from the Court below, by a plea to its jurisdiction, is manifest from the fact, as sworn to by him in his bill, that he was entirely ignorant of the existence and progress of said suits, until after judgments were obtained against him. That he did not make any special motion to the Court below, during the term in which said judgments were obtained against him, and as soon as he was apprised of the same, for the purpose of setting aside said judgments, on the ground of irregularity, is conceded by his counsel, on the argument of this motion. But, even if he had made such motion, and had been denied relief by the Court below; I doubt the power of this Court, to interfere and restrain the proceedings, under the judgments obtained in the Court below; for the complainant would still have a clear remedy at Law, against the Sheriff of said Court below, for a false return, if such be the fact. In the case of Shottenkirk *vs.* Wheeler, 3 *John. Ch. R.* 280, Chancellor Kent *affirms the doctrine, in unqualified terms, that* " there is no case, " *in which Equity has ever undertaken to question a judgment in a* " *Court of Law, for irregularity.*" "The power," he says, "of a Court " of Law, is always exercised in such cases, in sound discretion, and " the relief is frequently granted upon terms. This Court cannot im- " pose any such terms, or take any such cognizance of the case; and the " title, set up under the judgment and execution, must be received here " as a conclusive bar." The cases of Barker *vs.* Morgan, (2 *Dow's R.* 526,) decided in the English House of Lords in 1824, lays down, he says, the same rule. If this be the rule of a Court of Equity; upon

[Stites *vs.* Knapp, & al.]

what principle is it, then, that this Court can be called upon, in the present case, to restrain the proceedings in the Court below, by its process of Injunction? I can perceive none. But, were this case, on the face of the returns made by the Sheriff to the Court below, much stronger in favor of the complainant, than it in fact appears to be; even were it manifest to this Court, from the face of the returns themselves, that the Court below had assumed jurisdiction and proceeded to judgment, upon a manifestly illegal and void return; still it would be doubtful, if this Court could interfere by injunction. Even in such case, I apprehend, there would be a clear and adequate remedy at Law, by writ of prohibition; and, when such appears to be the fact, a Court of Equity can entertain no jurisdiction of the cause of complaint, but must dismiss the same, and remit the complainant to his remedy at Law.

For these reasons, I must refuse to grant the complainant the Injunction as prayed for, and must dismiss his bill.